IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTHA L. JOHNSON | : | CIVIL ACTION NO. **3:CV-04-2504** |
| Plaintiff | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), wherein the Plaintiff, Martha L. Johnson, is seeking review of the decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplemental security income benefits (SSI) pursuant to Title XVI of the Social Security Act (Act), 42 U.S.C. § § 1381- 83f.

## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed applications for SSI on October 20, 1983 and December 10, 1990, alleging disability since November 19, 1979 due to tendinitis in her right arm. (R. 138-41, 189-91). The agency denied her claims and the Plaintiff did not further appeal. (R. 143, 194-96, 340).

At issue here is the Plaintiff's October 20, 1983 SSI application. This is because on October 25, 1993, the Plaintiff was notified that her December 19, 1983 denial was being reconsidered based on the mandates of *Bailey v. Sullivan*, 1991 WL 207484 (M.D.P.A. 1991) (R.

145-46).¹  The agency again denied her application, and, upon the Plaintiff's request (R. 151), an ALJ conducted a hearing on December 11, 1996.  (R. 27-68).  The ALJ found that the Plaintiff was not disabled because she continued to have the ability to perform her past relevant work (R. 347). The Plaintiff requested review; Appeals Council granted review and remanded the matter to the ALJ (Tr. 359-61).²

On September 4, 1998, a second hearing was held before the same ALJ.  The Plaintiff, her daughter, and a vocational expert (VE) testified (R. 69-137).  Subsequently, on April 1, 1999, the ALJ issued a decision finding that the Plaintiff was not disabled because she was capable of performing a significant number of light jobs in the national economy during the relevant time period (R. 17-18).³  The ALJ also found the Plaintiff "not entirely credible."  (R. 17).  The Appeals Council denied the Plaintiff's request for review and the Plaintiff filed an appeal with the District Court (R. 5-6).

On December 16, 2002, the District Court remanded the case to the ALJ for a redetermination of Plaintiff's credibility (R. 484-86). The court found that the ALJ had failed to: 1) make a credibility assessment of the testimony of the Plaintiff's daughter, and; 2) take into account,

---

¹ *Bailey v. Sullivan*, a class action, ordered the reopening of claims for certain applicants whose claims were denied or terminated because their impairment or impairments were considered not severe and who received a final decision or an unfavorable administrative decision, but had not exhausted administrative remedies, between August 7, 1983, and November 30, 1984.  1991 WL 207484, *6 (M.D.P.A. 1991).

² The Appeals Council agreed with the Plaintiff that she had significantly understated, on a vocational report she filled out in 1983, the exertional demands of the her past jobs as a chain polisher and a nurse's aide. (R.360-61).  The Appeals Council ordered the ALJ on remand to "obtain further evidence, including evidence from a vocational expert, regarding the physical and mental demands of the claimant's past relevant work to determine at what exertional level the jobs were performed."  (R. 361).

³ This time, the ALJ found that the Plaintiff was precluded from performing her past relevant work.  (R. 17).

when evaluating the complaints of pain the Plaintiff had made at the previous hearing, the reclassification of the Plaintiff's past relevant work at a higher exertional level.

After the Appeals Council remanded the case to the ALJ in accordance with the District Court's order (R. 487-88), the ALJ recused himself and a different ALJ conducted a hearing on December 1, 2003 (R. 403-83). The Plaintiff, represented by an attorney,[4] her daughter, a VE, and a medical expert, Stanley Askin, M.D., testified at the hearing (R. 406-83). On January 9, 2004, the ALJ issued a decision finding that Plaintiff could perform her past relevant work as a pottery sponger and bander and, therefore, was not disabled under the Act (R. 400). After the Appeals Council declined to assume jurisdiction, the ALJ's decision became the final decision of the Commissioner (R. 380-82). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 10, 11, and 12).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." See 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995). The second step

---

[4] The Plaintiff was represented by an attorney at all three of the hearings stemming from the *Bailey*-mandated re-opening.

involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 400). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date, November 19, 1979. (R. 394). At steps two and three, the ALJ concluded from the medical evidence that Plaintiff's impairments, DeQuervain's disease,[5] carpal tunnel

---

[5] DeQuervain's disease, A.K.A. DeQuervain's tendonitis, is "fibrosis of the sheath of a tendon of the thumb." STEDMAN'S MEDICAL DICTIONARY 513 (27th ed. 2000).

4

syndrome, and alcohol abuse, are severe within the meaning of the Regulations, but do not meet or equal, either singly or in combination, the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 395-96). At step four, the ALJ found that Plaintiff's allegations regarding her limitations were not fully credible. (R. 397). Finally, at step five, the ALJ found that Plaintiff retained the residual functional capacity to "perform light work activity, alternating positions every 2 hours for 15 minutes during normal breaks." (R. 400). The ALJ found that she could "frequently but not repetitively handle and finger with the right upper extremity and she is right hand dominant." *Id.*

The ALJ concluded that the Plaintiff could return to her past relevant work as a pottery bander and sponger because her residual functional capacity did not preclude it. *Id.* Thus, Plaintiff was found to be not disabled within the meaning of the Social Security Act. *Id.*

## II. DISCUSSION.

### *A. Factual Background*

The Plaintiff, now seventy-five, was forty-nine at the time of her alleged disability onset in November 1979. She worked since she was twelve until September 1979, when she suffered a work-related injury to her right arm while working as a chain polisher. (R. 79, 168, 434). She received worker's compensation from then through 1990. (R. 161,162). Two vocational experts characterized the chain polisher job as medium. (R. 90, 471). Mrs. Johnson went to her family doctor about elbow pain in November 1979, soon after her injury (R. 228). Her doctor referred her to an orthopedic surgeon, Dr. Vincent Butera, M.D. (R. 248-255).

Dr. Butera treated the Plaintiff from January 9, 1980, through November 30, 1987 (R. 248-55). Dr. Butera initially tried the medication Tolectin, two wrist injections, and plaster immobilization with splinting, all in January and February 1980. (R. 254-255). Noting no significant improvement in the Plaintiff's pain, which was worse upon pinching and gripping, Dr. Butera provided decompression surgery of the first extensor compartment of the right wrist on March 18, 1980. (R. 254). Ten days later, he suggested a "gradual increase in activity [with] no vigorous activity." *Id*. In April and May Dr. Butera suggested physical therapy and biofeedback. *Id*. He noted the Plaintiff had "not much improved" on May 5, 1980. *Id*. On September 5, 1980, Dr. Butera noted that the Plaintiff had told him she could not lift, and he stated that "given her occupation that this restriction must be supported and, therefore, we will extend her disability indefinitely." (R. 253). He noted a "full range of motion but . . . significant weakness of grip and strength." *Id*.

The Plaintiff continued to complain of wrist pain, and on February 3, 1981, after consulting with another physician, he performed a right carpal tunnel decompression on Plaintiff's right wrist (R. 253, 252). Ten days after the surgery, Dr. Butera noted that the Plaintiff felt her pain was unchanged but he felt that "her extremity should certainly be improved in the long run." (R. 252). On March 6, 1981, the Plaintiff reported that the pain and numbness in the fingers and hand was less, but pain in her thumb remained. *Id*. Dr. Butera suggested she "use the hand to tolerance." *Id*. He diagnosed DeQuervain's tendonitis and prescribed Darvocet. *Id*. Dr. Butera noted that she was "doing well" in April 1981, and had "full range of motion" with "pain on extremes of motion" and "no significant swelling" in December 1981.

*Id*.  He noted that "no other modalities of therapy exist" and suggested the Plaintiff return yearly.  (R. 251).

She returned in May 1982, and Dr. Butera noted good passive motion of the fingers. *Id*.  In January 1983, the Plaintiff reported trouble using her right hand.  *Id*. Dr. Butera's examination confirmed "full motion of the wrist and fingers though grip and pinch strength are weak."  *Id*.  He recommended Motrin.  *Id*.  On October 14, 1983, Dr. Butera noted that the Plaintiff had recently lost her husband, and had been using her arm "fairly vigorously" in both caring for him and doing more around the house, which worsened the pain in her shoulder, elbow, and hand.  *Id*.  At her December 1, 2003 hearing, the Plaintiff testified that she "would give [her husband] a bath and shave him the best [she] could" from late 1982-1983, when he was diagnosed with and then died from cancer.  (R. 451, 452).[6]

At the October 14, 1983, Dr. Butera thought the Plaintiff had a rotator cuff problem as well as tendinitis.  (R. 250).  He gave the Plaintiff an injection in her shoulder, which provided "not much relief." *Id*.   On June 20, 1984, Dr. Butera found "no change in [her] clinical picture and suggested "use to tolerance," noting "[t]herapy has been of little value and I see no reason to resume it."  *Id.*  He mentioned the possibility of "some reflex sympathetic dystrophy."[7]  He stated, "I think that she remains disabled with an inability to do any heavy work with the right upper extremity." *Id*.

---

[6] At the 2003 hearing, the Plaintiff had trouble remembering the dates of her husband's illness and death.  (R. 451-52).

[7] "Reflex sympathetic dystrophy syndrome is a severe, painful and long-lasting condition that usually involves one arm or leg."  "The condition can be triggered by damage to nerve fibers in tissue that was injured in some way."  HARVARD MEDICAL SCHOOL'S CONSUMER HEALTH INFORMATION, *at* http://www. intelihealth.com (last visited November 23, 2005).

The Plaintiff continued to see Dr. Butera yearly through 1987. In November 1987, Dr. Butera noted persistence of the "chronic tendonitis at her elbow, wrist, hand, that she has had over a period of many years." (R. 248). He suggested a "rehab specialist may be of value" and noted that "[s]he is concerned that she is not considered totally disabled and this affects her benefits from the insurance company." *Id*.

***B. Whether the ALJ erred in finding the Plaintiff not fully credible as to the extent of her limitations***

The Plaintiff raises five arguments in her brief. (Doc. 10 at 13). We find that the ALJ erred with respect to one of these arguments: failing to find her fully credible as to the extent of her limitations. We confine our discussion to this issue because 1) this matter has previously been remanded on the issue of credibility, albeit for different reasons, and 2) the error we found at this step would surely have affected the ALJ's entire analysis.

The ALJ's error stems from her choice of the relevant period, as defined in *Bailey v. Sullivan,* to use in evaluating the Plaintiff's reopened application. *Bailey* ordered the reopening of claims for the following class, to which the plaintiff belongs:

> All Pennsylvania or Delaware applicants for or recipients of Social
> Security disability benefits or Supplemental Security Income benefits
> based upon disability who received unfavorable administrative
> decisions resulting in denial or termination of such benefits because
> their impairment or impairments were considered not severe and who,
> between August 7, 1983 and November 30, 1984,
>
> (a) had received a final decision of the Secretary; or
>
> (b) had received an unfavorable administrative decision but had not
>     exhausted administrative remedies.

1991 WL 207484, *6 (M.D.P.A. July 29, 1991).  *Bailey* also instructed that:

> The claims of class members whose denial or termination resulted in
> class membership will be reviewed from:
> (a) the seventeenth month prior to the date of application or date of
> earliest alleged onset of disability, whichever is later, in cases where
> benefits under Title II were denied [Note: in those Title II cases where
> beginning review at the earlier point in time would benefit the class
> member consistent with statutory and regulatory requirements, review
> will be done from that earlier point];
> (b) the date of application, in cases where benefits under Title XVI
> were denied; or
> (c) the date of the termination of disability benefits;
> Whichever is applicable. The review shall continue through the date of
> the latest denial or termination of benefits that made the class member
> entitled to relief under this Stipulation and Order.

1991 WL 207484 at *3 (emphasis added).  The ALJ determined that the relevant time period, according to *Bailey*, was from the seventeenth month prior to the date of the Plaintiff's application.  (R. 393).  Since the Plaintiff filed her application on October 20, 1983, that date was May 1, 1982.  *Id.*  Accordingly, the ALJ reviewed the Plaintiff's claim from that May 1, 1982.  *Id.*  We find this to be in error.

While *Bailey* directs the Commissioner to begin review from the later of two time points, it also states that "in those cases where beginning review at an earlier point in time would benefit the class member consistent with statutory and regulations, review will be done from the earlier time point."  1991 WL 207484 at *3.  In the present case, the earlier time point would be the Plaintiff's alleged disability onset date, November 19, 1979.  (R. 138-41, 189-91).  Because we find that review from that time point would "benefit the class member consistent with statutory and regulations," we recommend remand.  1991 WL 207484 at *3.

Review from November 19, 1979, rather than May 1, 1982, would benefit the Plaintiff because the Plaintiff's injury occurred in September 1979, as discussed above, and the most intensive medical care, consisting of surgeries, therapies, and prescriptions, took place between these two dates. As summarized above, the Plaintiff saw her treating physician, Dr. Butera, eight times in 1980 and six times in 1981, compared to only once in 1982, three times in 1983, once each in 1985 and 1986, and three times in 1987. (R. 248-55).

When the ALJ considered the Plaintiff's credibility, she focused on the treatment and pain the Plaintiff had after May 1, 1982. (R. 397). This resulted in a skewed and partial picture of the Plaintiff's pain and treatment. While the ALJ did mention the surgeries and two of the physician visits the Plaintiff had before this date, she left out the therapy and medication the Plaintiff tried for pain relief. (R. 397). Instead, the ALJ relied on such evidence as the normal range of motion tests at different times in 1983 and 1984 to find the Plaintiff not credible about the extent of her limitations, noting that "the claimant's degree of treatment during the relevant period does not support disability." *Id*. The ALJ also stated that the Plaintiff had only "one injection during the relevant period," "some physical therapy," "was not on significant amounts of medication," "did not take narcotic medication," and "was not involved with pain management." *Id*.

By ignoring the time period prior to May 1982, the ALJ also ignored some factors that, had they been considered, could have explained the apparent lack of medication and therapy after May 1982. First, the Plaintiff claimed that the pain medication she had tried pre-1982 made her sick, and did not help. (R. 449). Second, the Plaintiff's treating physician, after

trying several different courses of action for the Plaintiff's pain, including medication and therapy, stated, in 1981, that "[n]o other modalities of therapy exist" (R. 251-55, 251). Because it would have allowed the ALJ to have considered the whole picture, inclusion of pre-May 1982 evidence would clearly have benefitted the Plaintiff.

Since the ALJ found the Plaintiff "generally credible" otherwise and even credited her testimony about caring for her husband over her daughter's testimony that she did not, it seems that the quantity of evidence the ALJ considered negatively impacted her credibility determination about the Plaintiff's limitations. Therefore, the ALJ should have chosen the earlier time point, as *Bailey* instructed. 1991 WL 207484 at *3. We recommend remand so that ALJ can consider evidence from the alleged disability onset date of November 19, 1979 in making a disability determination.

## V. RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be REMANDED.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 8, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTHA L. JOHNSON | : | CIVIL ACTION NO. **3:CV-04-2504** |
| Plaintiff | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART, Commissioner of Social Security, | : | |
| Defendant | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 8, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection

is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                s/Thomas M. Blewitt
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: December 8, 2005**